IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–00227–EWN–MEH


RICK JOHNSON,

      Plaintiff,

v.

USA TRUCK INC., a non registered foreign corporation doing business in Colorado, and
TERRICK K. SCOTT,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a negligence case.  Plaintiff Rick Johnson was injured in an accident caused by

Defendant Terrick K. Scott ("Defendant Scott"), a former employee of Defendant USA Truck,

Inc. ("Defendant Truck").  Plaintiff alleges that Defendant Scott acted negligently in causing a

motor vehicle accident and Defendant Truck is subject to the doctrine of *respondeat superior* for

his negligence.  Additionally, Plaintiff alleges Defendant Truck was negligent in hiring, training,

supervising, and retaining Defendant Scott.  This matter is before the court on "Defendant USA

Truck, Inc.'s Motion for Summary Judgment," filed on October 10, 2006.  Jurisdiction is

premised upon diversity of citizenship pursuant to 28 U.S.C.A § 1332 (West 2007).

**FACTS**

*1.     Factual Background*

On February 23, 2005, Defendant Scott and Plaintiff were involved in a motor vehicle

accident.  (Notice of Removal Pursuant to 28 U.S.C. § 1332, Ex. A ¶ 5 [Compl. and Jury

Demand] [hereinafter "Compl."] [filed Feb. 9, 2006] [hereinafter "Notice of Removal"].)

Weather conditions were unfavorable and Defendant Scott, driving a semi-truck, collided into a

vehicle from behind.  (Pl.'s Resp. to Def. USA Truck, Inc.'s Mot. for Summ. J., Ex. 1 at 1–2

[Accident Report], Ex. 3 at 34 [Scott Dep.] [filed July 27, 2007] [hereinafter "Pl.'s Resp."].)  The

vehicle Defendant Scott struck then collided into Plaintiff's vehicle and caused Plaintiff to collide

into a yet another vehicle.  (*Id.*)  Plaintiff sustained severe neck, back, and shoulder injuries in the

collision.  (Compl. ¶ 31.)  Defendant Scott received a citation for careless driving in connection

with the accident.  (Pl.'s Resp., Ex. 1 [Accident Report].)  Further, Defendant Truck terminated

Defendant Scott's employment because of the accident.  (Def. USA Truck, Inc.'s Mem. Br. in

Supp. of Mot. for Summ. J., Statement of Undisputed Material Facts ¶ 10 [filed Oct. 10, 2006]

[hereinafter "Def.'s Br."]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 10.)

Defendant Scott was convicted of a felony drug charge in 1993.  (*Id.*, Statement of

Undisputed Material Facts ¶ 5; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶

5.)  Defendant Scott has never had his driver's license suspended.  (*Id.*, Statement of Undisputed

Material Facts ¶ 7; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 7.)  Other

than the accident at the heart of this litigation, Defendant Scott has never received a traffic

citation or collided with a car while driving a semi-truck.  (*Id.*, Statement of Undisputed Material

Facts ¶¶ 6, 8; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 6, 8.)

> ### 2.   Procedural History

On December 28, 2005, Plaintiff filed a complaint in the District Court for Pueblo County,

Colorado, asserting claims: (1) against Defendant Scott for negligence and negligence *per se*; and

(2) against Defendant Truck for *respondeat superior* and negligent hiring, training, supervision,

and retention.  (Compl.)  On February 9, 2006, Defendant Truck answered the complaint and

removed the case to this court.  (Notice of Removal; Answer and Jury Demand [filed Feb. 9,

2006].)

On October 10, 2006, Defendant Truck filed a motion styled as one for summary

judgment.  (Def.'s Br.)  In actuality, Defendant Truck moves for partial summary judgment.  (*Id.*)

Defendant Truck argues Plaintiff's claim for negligent hiring, training, supervision, and retention

must fail because there is no evidence that it knew or should have known that Defendant Scott

posed a threat of serious harm to others.  (*Id.*)  On November 9, 2006, Plaintiff filed a response

that failed to comply with this court's practice standards.  (Pl.'s Resp. to Def. USA Truck, Inc.'s

Mot. for Summ. J. [filed Nov. 9, 2006].)  On July 17, 2007, the court struck Plaintiff's non-

compliant response.  (Order [filed July 17, 2007].)  On July 27, 2007, Plaintiff filed an amended,

compliant response.  (Pl.'s Resp.)  On August 6, 2007, Defendant filed a reply in support of its

brief.  (Def. USA Truck, Inc.'s Reply in Supp. of Mot. for Summ. J. [filed Aug. 6, 2007]

[hereinafter "Def.'s Reply"].)

## ANALYSIS

### 1.    *Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)

(2007); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc.*

*v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving

party may not rest solely on the allegations in the pleadings, but must instead designate "specific

facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P.

56(e) (2007).  A fact in dispute is "material" if it might affect the outcome of the suit under the

governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury

to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.

1997) (citing *Anderson*, 477 U.S. at 248).  The court may consider only admissible evidence when

ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d

1467, 1474 (10th Cir. 1985).  The factual record and reasonable inferences therefrom are viewed

in the light most favorable to the party opposing summary judgment.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.      Evaluation of Claims**

In Colorado, "a claim for negligent hiring, [retention,] training, and supervision is based on the employer's failure to discover that the employee created an undue risk of harm to others."[1] *Kahland v. Villarreal*, 155 P.3d 491, 493 (Colo. Ct. App. 2006) (citing *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316 [Colo. 1992]).  Liability for such negligence attaches directly to the employer and is distinct from the liability that attaches under the doctrine of *respondeat superior*.  *Raleigh v. Performance Plumbing & Heating, Inc.*, 130 P.3d 1011, 1016 n.6 (Colo. 2006).  Because the standards are slightly different, the court examines Plaintiff's claim and the parties' arguments in two sections below.

**a.      Negligent Hiring and Retention**

An employer will be found liable for negligent hiring and retention if, at the time of hiring, the employer had reason to believe that hiring the employee in question would create an undue risk of harm to others.  *Van Osdol v. Vogt*, 908 P.2d 1122, 1133 (Colo. 1996).  In examining a negligent hiring and retention claim, "the court does not inquire into the employer's broad reasons for choosing this particular employee for the position, but instead looks to whether the specific

---

[1]There is some question as to whether Colorado law contemplates a cause of action for negligent training.  (*See* Def.'s Br. at 7 n.1.)  As will be seen, the point is moot for the purposes of the motion currently at issue.  Accordingly, the court assumes without deciding that such a claim does exist under Colorado law.

danger which ultimately manifested itself could have reasonably been foreseen at the time of hiring." *Id*.

Here, Defendant Truck argues it is entitled to summary judgment on Plaintiff's negligent hiring and retention claim because "there is no evidence supporting such claim[]." (Def.'s Br. at 5.) In support of this contention, Defendant Truck points the court to Plaintiff's July 14, 2006 response to Defendant's first set of interrogatories. (*Id.*) The interrogatory requested that Plaintiff:

    a.    Describe, in detail, all facts which [sic] support the contention that [Defendant Truck] failed to exercise reasonable care in hiring [Defendant] Scott;

    b.    Describe, in detail, all facts which [sic] support the contention that [Defendant Truck] failed to exercise reasonable care in training [Defendant] Scott;

    c.    Describe, in detail, all facts which [sic] support the contention that [Defendant Truck] failed to exercise reasonable care in supervising [Defendant] Scott; and

    d.    Describe, in detail, all facts which [sic] support the contention that [Defendant Truck] failed to exercise reasonable care in retaining [Defendant] Scott.

(*Id.*, Ex. A–1 at 12 [Interrog. Resp.].)

Plaintiff responded as follows:

OBJECTION.  Discovery is ongoing in this matter and [Defendant Truck] only recently provided [Defendant] Scott's employment file.  Without waiving said objections, [Defendant] Scott received a careless driving citation for the accident. I believe that [Defendant] Scott was driving too fast for the conditions of the road which [sic] caused the accident.  I believe that if [Defendant] Truck has [sic] properly screened their [sic] employees prior to hiring, [Defendant] Scott may [sic]

not have been hired and this accident would not have happened.  Plaintiff [sic] reserves the right to supplement this response.

(*Id.*, Ex. A–1 at 13 [Interrog. Resp.].)  Plaintiff responds to Defendant Truck's "argument" with citation to: (1) Defendant Scott's employment file — ostensibly the same file referenced in his interrogatory response; and (2) the testimony of Defendant Truck's vice president of human resources — obtained approximately one month *after* Plaintiff submitted the interrogatory response.  (Pl.'s Resp. at 4.)

The file and testimony reveal that, prior to working for Defendant Truck, Defendant Scott worked for approximately one month as a driver for a different trucking company, where he had an "unsatisfactory" safety record and was terminated after being involved in a motor vehicle accident.  (*Id.*, Ex. 2 at 45 [Weindel Dep.], Ex. 6.2 at 11, 17–18 [Personnel File].)[2]  Defendant Truck's only response to Plaintiff's argument is that Defendant Scott's prior accident involved striking a low-hanging bridge, while the accident at issue in this case involved "a rear-end accident due to icy road conditions."  (Def.'s Reply at 2.)  Defendant Truck reasons that the difference in conditions and circumstances surrounding the accidents shows "there is no causal connection between Ms. Scott's [sic] previous accident and the accident which [sic] is the subject matter of this litigation."  (*Id.*)

Defendant Truck's evident misunderstanding of its burden in moving for summary judgment astonishes this court.  When driving is involved in performance of the job

---

[2]Plaintiff presents Defendant Scott's personnel file in three sections.  (Pl.'s Br., Ex. 6 [Personnel File].)  To avoid confusion, the court designates each section with a corresponding numeral after the exhibit number.

responsibilities, an employer has a duty "to use reasonable care in hiring a safe driver who would not create a danger to the public in carrying out the duties of the job." *Connes*, 831 P.2d at 1323. Given that Defendant Scott's employment history contains a prior accident and an "unsatisfactory" safety record — which Defendant Truck apparently knew, because it obtained this information in connection with hiring Defendant Scott — this court simply cannot find that there is no evidence on the record to support Plaintiff's claim of negligent hiring and retention.[3] Accordingly, summary judgment is not appropriate on the claim. *See Celotex*, 477 U.S. at 325 (holding that a summary judgment movant bears the initial burden of showing an absence of evidence to support the non-movant's case).

### b.      *Negligent Supervision and Training*

Defendant Truck carries over its stunningly deficient argument to Plaintiff's claim for negligent supervision and training. (Def.'s Br. at 7–8.)  In Colorado, an employer who knows or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm can be held directly liable to third parties for harm proximately caused by the employee's conduct. *Destefano v. Grabrian*, 763 P.2d 275, 288 (Colo. 1988).  To maintain a claim for negligent supervision, a plaintiff must establish that the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. *Id*.

---

[3]This court does not find or aim to suggest that a single accident ought preclude an employer from hiring or retaining a driver out of liability or safety concerns.  The court only finds that, in this case, Defendant Scott's prior accident and unsatisfactory safety record are sufficient evidence to survive summary judgment — especially given Defendant Truck's unwillingness to rebut the evidence directly and engage its substance.

Defendant Truck argues that it is entitled to summary judgment on Plaintiff's negligent training and supervision claim because "there is no evidence in the record establishing that [Defendant Truck] knew or should have known that [Defendant] Scott's conduct would subject third parties to an unreasonable risk of harm." (Def.'s Br. at 7.)  Again, Defendant Truck supports its argument by citing Plaintiff's interrogatory response, set forth above.  (*Id.*)  Defendant Truck's argument is just as unconvincing and insufficient here as it was concerning Plaintiff's claim for negligent hiring and retention.

In responding to Defendant Truck's argument, Plaintiff points the court to the testimony of Defendant Scott and Mike Neal, Defendant Truck's director of safety and security, both obtained several weeks *after* Plaintiff submitted his interrogatory response.  (Pl.'s Resp. at 15–16.)  Plaintiff argues that Defendant Truck knew or should have known that Defendant Scott could face snowy or icy adverse conditions in February in Colorado.  (*Id.* at 15.)  The court finds this argument altogether logical and underscores the likelihood that a reasonable jury would agree.  Plaintiff then points to Defendant Scott's testimony concerning his training for driving in snowy conditions.  To wit:

> COUNSEL:    Can you estimate for me how often you had the opportunity to drive in ice and snow conditions prior to the February 2005 accident in Colorado?
>
> SCOTT:        Three or four times.
>
> COUNSEL:    Okay.  During that orientation process that your received at [Defendant Truck] that you started describing for me, did you receive any training on driving in ice and snow conditions?
>
> SCOTT:        Not hands-on.
>
> COUNSEL:    Explain what you mean by that.

SCOTT:          Paper.  You read sheets dealing with the snow.

(*Id.*, Ex. 3 at 32–33 [Def. Scott Dep.].)  Further, Plaintiff points to  Mr. Neal's testimony

concerning training:

COUNSEL:     During [Defendant] Scott's employment with [Defendant]
             Truck . . . to your knowledge, did he ever get any training
             specifically in driving on ice and snow?
NEAL:        To my knowledge, he should have had ethics and techniques
             [training], which has a brief discussion of that.

(*Id.*, Ex. 4 at 20 [Neal Dep.].)  This court finds that a reasonable jury could conclude that "a brief

discussion" and some light reading on driving in ice and snow were insufficient training.  (*Id.*)

Moreover, a reasonable jury could well conclude that, given the nature of the provided training,

Defendant Truck knew or should have known that Defendant Scott posed an unreasonable risk of

harm to other drivers on Colorado's oft-snowy roads.

Defendant Truck's only argument counseling against this result is that "there is no

evidence establishing a causal link between the accident and [Defendant] Scott's brake

application."  (Def.'s Reply at 3.)  Defendant Truck's focus on the substance of the training it

provided Defendant Scott is misguided.  The court recognizes that Defendant Scott testified: (1)

before the accident, he "patted the brakes" three times, a practice he leaned at Defendant Truck's

employee orientation; and (2) the truck he was driving did not have anti-lock brakes.  (Pl.'s Resp.,

Ex. 3 at 37–39 [Def. Scott Dep.].)  The court also recognizes that Plaintiff has offered an expert

opinion that "patting the brakes" is "not an accepted technique of safely applying the brakes in

inclement weather."  (*Id.*, Ex. 7 [Report].)  Finally, the court recognizes Defendant Truck's

questionably valid argument that the expert report is inadmissible hearsay evidence.  (Def.'s Reply

at 3.)  But in this case, the court can stop at form and need not address substance.  This court is fully satisfied that a reasonable jury could find that, given Defendant Truck's admittedly brief, paper-based training for driving in adverse winter weather conditions, Defendant Truck knew or should have known that Defendant Scott was ill-equipped to drive in snowy or icy conditions and, therefore, posed an unreasonable risk to other drivers on Colorado roads in the dead of winter. Accordingly, Defendant Truck is not entitled to summary judgment on Plaintiff's claims.

      *c.*     *Ancillary Issue: Adverse Inference*

      Plaintiff argues that because Defendant Truck destroyed Defendant Scott's log books, it is entitled to an adverse inference that Defendant Scott "was presumably over the federally mandated hours of service when [the] crash occurred."[4]  (Pl.'s Resp. at 21.)  The court disagrees. First, there is some question as to whether Defendant Truck wilfully destroyed the log books.  In the Tenth Circuit, "an adverse presumption that follows the destruction or spoliation of evidence arises only in cases of willful destruction [or] suppression."  *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 864 (10th Cir. 2005) (citation and internal quotation marks omitted) (alteration in original).  "[M]ere negligence in losing or destroying records" is not sufficient to warrant an adverse inference, "because it does not support an inference of consciousness of a weak case."  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997).  In the instant case, Defendant Truck asserts that it scanned Defendant Scott's log books into its computer auditing

---

[4]Because the court has already resolved Defendant Truck's motion for summary judgment, the adverse inference Plaintiff seeks would presumably only apply going forward in settlement discussions and trial.

-11-

system and retained the logs for six months, as mandated by federal law.  (Def.'s Reply at 4 n.1.)
Defendant Truck asserts that Plaintiff never asked for the logs and after the six-month period
expired, the logs "were automatically purged by the computer system."  (*Id.*)  Without more, the
court cannot find that Defendant Truck's destruction of the log books was willful and not merely
negligent.

Further, the circumstances as presented to the court do not warrant the adverse inference
Plaintiff seeks.  Plaintiff points the court to *J. B. Hunt Transp. v. Bentley*, 427 S.E.2d 499 (Ga.
Ct. App. 1992).  In *Hunt*, the court found that where the employer had destroyed its truck-driver
employee's log books, an adverse inference that an employee had driven longer than the federally-
mandated time limit was appropriate.  427 S.E.2d at 500  Importantly, the *Hunt* employer: (1)
purposefully destroyed the logs; (2) "was a 'habitual violator' of the hours-in-service
requirements;" and (3) operated a "forced dispatch" system, under which drivers could be
terminated for refusing to transport a truck load.  *Id.*  Further, undisputed evidence suggested that
the *Hunt* driver was operating on insufficient rest.  *Id.*  The driver: (1) wove between lanes on the
road while driving; (2) failed to slow his vehicle, which was traveling at sixty-five miles per hour,
despite warnings of construction ahead; and (3) hit a readily visible parked vehicle without
braking to avoid collision.  *Id.*  In the instant case, Plaintiff has not brought forth any analogous
facts concerning either Defendant Truck or Defendant Scott.  Accordingly, the court finds that
imposition of an adverse inference is not appropriate at this time.

### 3.      *Conclusion*

Based on the foregoing it is therefore ORDERED that:

1.      Defendant's motion (# 40) is DENIED.

2.      The court will hold a Final Pretrial Conference commencing at 4:15 o'clock p.m. on October 5, 2007, in Courtroom A201 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web addresses should be used to insure that the proper format is observed.]

Dated this 27th day of August 2007

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge

-13-